Heather PARKS and Jimmy Phillips,
Appellants–Respondents,

v.

**DELAWARE COUNTY DEPARTMENT
OF CHILD SERVICES, Appellee–
Petitioner.**

No. 18A02–0607–JV–597.

Court of Appeals of Indiana.

March 21, 2007.

Jacob P. Dunnuck, Muncie, IN, Attorney for Appellant Heather Parks.

L. Ross Rowland, Muncie, IN, Attorney for Appellant Jimmy Phillips.

Timothy R. Hollems, Indiana Department of Child Services, Muncie, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Heather Parks ("Mother") and Jimmy Phillips ("Father") appeal the involuntary termination of their parental rights to their two sons, J.P. and B.P. (collectively "the Children"). Mother and Father argue that there is not clear and convincing evidence to support the trial court's orders terminating their parental rights.[1] Because the *sua sponte* findings entered by the trial court are insufficient and hinder an effective appellate review, we remand to the trial court.

### Facts and Procedural History

Mother and Father have two sons: J.P., born October 29, 1998; and B.P., born September 23, 2000. In March 2003, the Delaware County Department of Child Services ("DCDCS") filed individual petitions alleging that the Children were children in need of services ("CHINS"). Thereafter, the trial court determined that the Children were CHINS and ordered Mother and Father to have supervised visitation for one hour per week and noted that the visitation would increase once Mother and Father were able to demonstrate that they were learning "appropriate parenting skills and fulfilling parental obligations." Ex. p. 12. The trial court also ordered Mother and Father to, among other things, participate in family service programs and have a psychological evaluation and treatment.

In September 2004, the DCDCS filed individual petitions to involuntarily terminate Mother and Father's parental rights to the Children. In the termination peti-

1. Mother and Father individually appealed from the trial court's orders terminating their parental rights to the Children; however, their appeals have now been consolidated, and we will review their individual arguments in this opinion.

tions, the DCDCS alleged, in relevant part, that the continuation of the parent-child relationship posed a threat to the well-being of the Children and that termination was in the best interests of the Children. The trial court held hearings on the termination petitions on June 27, 2005, November 14, 2005, and March 13, 2006. The trial court ordered the parties to submit proposed findings of fact and conclusions of law, and on June 29, 2006, the trial court adopted and signed the DCDCS's proposed findings and ordered the involuntary termination of Mother and Father's parental rights to the Children.[2] Specifically, the trial court concluded, in part, that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Children and that termination of the parent-child relationship was in the best interests of the Children.[3] Mother and Father now appeal.

### Discussion and Decision

■■■ Mother and Father argue that the trial court erred by terminating their parental rights to the Children. The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind.2005). However, these parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *Id.* Parental rights may be terminated when the parents are unable or unwilling to meet their parental re-

sponsibilities. *Id.* The purpose of terminating parental rights is not to punish parents, but to protect children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.*

Indiana Code § 31–35–2–8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code § 31–35–2–4] are true, the court shall terminate the parent-child relationship." Indiana Code § 31–35–2–4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege that:

(A) one (1) of the following exists:

    (i)   the child has been removed from the parent for at least six (6) months under a dispositional decree;

   (ii)  a court has entered a finding under Ind.Code § 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

  (iii)  after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

    (i)   the conditions that resulted in the child's removal or the rea-

---

**2.** The trial court entered individual termination orders for J.P. and B.P., and the trial court's orders are identical, with the exception of five additional findings in J.P.'s order. *See* Father's App. p. 25–32, 75–81.

**3.** The trial court also concluded that there was a reasonable probability that the conditions that resulted in the Children's removal would not be remedied despite the fact that the DCDCS did not allege such in the termination petitions.

sons for placement outside the home of the parents will not be remedied; or

   (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Because subsection (b)(2)(B) is written in the disjunctive, the trial court need only find one of the two elements by clear and convincing evidence. *Bester*, 839 N.E.2d at 148 n. 5.

■ The State must establish these allegations by clear and convincing evidence. *Bester*, 839 N.E.2d at 148; *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind.1992). When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Bester*, 839 N.E.2d at 147. We will consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. *Id.*

■ Here, the trial court entered *sua sponte* findings of fact when it ordered Mother and Father's parental rights to be terminated. At the conclusion of the termination hearing, the trial court ordered the parties to submit proposed findings of fact and conclusions of law. Mother and the DCDCS submitted their proposed findings, and the trial court signed the DCDCS's findings and adopted them as its own. The Indiana Supreme Court has acknowledged that a trial court's verbatim adoption of a party's proposed findings may have important practical advantages and has expressly declined to prohibit the practice. *See Prowell v. State*, 741 N.E.2d 704, 708–09 (Ind.2001). Indeed, Indiana Trial Rule 52(C) provides that a trial court may require the parties to submit proposed findings and conclusions. However, the wholesale adoption of one party's findings results in an "inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court." *Id.* at 709. Thus, while a trial court is certainly not prohibited from adopting verbatim a party's findings, we would discourage this practice where—as happened here and will be discussed in further detail below—many of the findings submitted by a party are not proper findings. A trial court needs to remember that when it signs one party's findings, it is ultimately responsible for their correctness. *See In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind.Ct.App.2005).

■■ While reviewing the trial court's *sua sponte* findings, we note that "[s]ua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997); *see also* Ind. Trial Rule 52(D). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.*

■ A trial court is not statutorily required to enter findings when involuntarily terminating a parent-child relationship. *See* I.C. § 31–35–2–8 (providing that "if the court finds that the allegations in a petition [to involuntarily terminate a parent-child relationship involving a CHINS] are true, the court shall terminate the parent-child relationship").[4] Nevertheless,

---

4.  We note, however, that a trial court is required to enter findings in the proceedings for grandparent visitation, *see* Ind.Code § 31–17–

5–6 (providing that "[u]pon hearing evidence in support of and opposition to a petition [for grandparent visitation], the court shall enter a

when a trial court has, under Indiana Trial Rule 52, made findings of fact and conclusions of law in a parental termination case, we apply a two-tiered standard of review. *Bester,* 839 N.E.2d at 147. First, we determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* We will not set aside the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Yanoff,* 688 N.E.2d at 1262. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

▆▆▆▆ Although not raised by the parties, we find it necessary to review and comment on the propriety of the trial court's findings. As noted above, the trial court signed the DCDCS's proposed findings and adopted them as its own. However, the majority of those findings are mere recitation of testimony and witness opinions. For example, approximately thirty of the thirty-five findings contained in J.P.'s termination order and twenty-five of the thirty findings in B.P.'s termination order provide that a certain witness "testified that...." *See* Father's App. p. 26–31, 76–80. Our Indiana Supreme Court has previously held that statements of this kind are "not findings of basic fact in the spirit of the requirement." *Perez v. U.S. Steel Corp.,* 426 N.E.2d 29, 33 (Ind.1981). "A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or

Z." *In re Adoption of T.J.F.,* 798 N.E.2d 867, 874 (Ind.Ct.App.2003) (citing *Perez,* 426 N.E.2d at 33); *see also Norlund v. Faust,* 675 N.E.2d 1142, 1148 n. 2 (Ind.Ct. App.1997) (noting that "a recitation to the effect that the evidence 'suggests' or 'indicates' the existence of a particular fact is not adequate to constitute a finding of that fact"), *clarified on denial of reh'g,* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied; but see Weiss v. Harper,* 803 N.E.2d 201, 206 n. 8 (Ind.Ct.App.2003) (providing that the specificity requirement in *Perez* "appears applicable only to administrative fact-finding"). In other words, "findings which indicate that the testimony or evidence was this or the other are *not* findings of fact." *Moore v. Ind. Family & Social Servs. Admin.,* 682 N.E.2d 545, 547 (Ind.Ct.App.1997) (emphasis added). Instead, "[a] finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Id.* "[T]he trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *T.J.F.,* 798 N.E.2d at 874. Furthermore, Indiana Trial Rule 52(A) provides that when a trial court enters findings "[u]pon its own motion," it "shall find the facts specially and state its conclusions thereon."

▆▆▆ The *Perez* court noted that the inclusion of statements that are not findings and that are merely recitation of testimony is "not harmful error" and, instead, should be considered as "mere surplusage." *Perez,* 426 N.E.2d at 33. Accordingly, the following findings in this case are the only ones contained in the trial court's orders that were not preceded by "testified that" and that could be considered proper findings:

decree setting forth the court's findings and conclusions"), and appointments of a guardian *ad litem, see* Ind.Code § 29–3–2–3(a) (providing that "[t]he court as part of the record of the proceeding shall set out its reasons for appointing a guardian ad litem").

1. That [Father] and [Mother] are the natural parents of [J.P.], born October 29, 1998.[5]

2. That the child has been removed from the care of the parents and has been under supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months.

\*    \*    \*    \*    \*    \*

12. ... Even after being notified by Barbara Hisel that entering into the Shepherd Center program could lead to the placement of her removed children back with her, [Mother] still refused to enter that program.

\*    \*    \*    \*    \*    \*

15. That [Mother] and [Father] continually refused to provide any information concerning income, bills, receipts, and budgeting, despite numerous requests by Barbara Hisel for [Mother] and [Father] to provide this information.

\*    \*    \*    \*    \*    \*

35. That due to the unstructured, chaotic, and argumentative nature of [Mother] and [Father's] personal relationship, that they are unable to provide the structured environment necessary for [B.P.] and [J.P.].

\*    \*    \*    \*    \*    \*

Father's App. p. 25–27, 30.[6] From these findings, the trial court made the following conclusions:

40. That based on the foregoing, there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied.

41. That based on the foregoing, there is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well being of the child.

42. Termination of the parent/child relationship is in the best interest of the child.

43. The Indiana Department [of] Children Services has a satisfactory plan for the care and treatment of the child, which includes either adoptive placement or long-term foster care.

44. The Indiana Department of Children Services has proven their petition herein by clear and convincing evidence.

Father's App. p. 31.[7]

The trial court's findings that were proper are insufficient to support the judgment of termination of the parental rights of Mother and Father. And since these findings related to the only issues for our review in this proceeding, namely, the best interests of the Children and the threat to the Children's well-being, we are not at liberty to scour the record to find evidence to support the judgment. *See* Ind. Trial Rule 52(D); *Yanoff,* 688 N.E.2d at 1262. Put differently, we are bound by the findings of the trial court on the issues that are covered and since these issues are the only issues in a termination case we may not look to other evidence to support the judgment.

Because the findings are deficient, we must remand to the trial court for proper findings that support the judgment. Termination of parental rights is such a seri-

---

**5.** The trial court's termination order for B.P. provided: "[t]hat [Father] and [Mother] are the natural parents of [B.P.], born September 23, 2000." Father's App. p. 75.

**6.** These same findings are contained in B.P.'s termination order, but finding # 35 in J.P.'s

order is found at finding # 30 in B.P.'s order. *See* Father's App. p. 76–77, 79.

**7.** These same conclusions are contained in B.P.'s termination order, but they are contained in B.P.'s order as # 35–39. *See* Father's App. p. 80.

ous matter that we must be convinced that the trial court based its judgment on proper considerations. We cannot determine this based on these findings. Although we recognize that the trial court is not required to make findings in termination cases unless specifically asked to do so by the parties, once the trial court walks down the path of making findings, it is bound under Indiana Trial Rule 52(A) to make findings that support the judgment. Accordingly, we remand this matter to the trial court for proper findings of fact and conclusions of law. *See Moore,* 682 N.E.2d at 547 (remanding to the trial court for "proper" findings of fact where the facts included evidentiary recitations); *Taylor v. Ind. Family & Social Servs. Admin.,* 699 N.E.2d 1186, 1190 (Ind.Ct.App.1998) (same), *reh'g denied.*

Remanded for the entry of proper findings of fact and conclusions of law.

BAILEY, J., and BARNES, J., concur.