# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 07 2021, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Attorney at Law
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Alan K. Davis
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of R.G., a Child Alleged to be in Need of Services, | January 7, 2021 |
| | Court of Appeals Case No. 20A-JC-1379 |
| T.N. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Scott Circuit Court |
| v. | The Honorable Marsha Owens Howser, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 72D01-1911-JC-96 |
| *Appellee-Petitioner* | |

**Vaidik, Judge.**

# Case Summary

[1]    T.N. ("Mother") appeals the trial court's determination that her son, R.G. ("Child"), is a Child in Need of Services (CHINS). Concluding the evidence presented to the trial court did not support its finding, we reverse.

# Facts and Procedural History

[2]    Mother and C.G. ("Father") are the biological parents of Child, born in September 2014. Father stipulated Child is a CHINS and does not participate in this appeal. Mother also has a daughter, A.N., from a prior relationship.

[3]    On October 30, 2019, the Department of Child Services (DCS) received a report Child and A.N. were "victims of [n]eglect in the form of being exposed to domestic violence." Appellant's App. Vol. II p. 12. The report alleged Mother had committed domestic violence against her boyfriend ("Boyfriend"). Specifically, the report alleged Mother punched Boyfriend repeatedly in the face in front of the children and "pulled a butcher knife on him." *Id.* On November 1, Family Case Manager (FCM) Mercedes Smith investigated the report. Finding the domestic-violence allegations to be "factual" against Mother, FCM Smith removed Child and A.N. from the home.[1] *Id.* at 13. Child was placed with Father.

---

[1] Mother is not appealing the proceedings involving A.N.

[4] On November 6, DCS filed a petition alleging Child is a CHINS. In February 2020, the trial court conducted a fact-finding hearing. Only two caseworkers testified. FCM Smith testified as to the domestic-abuse allegations against Mother and the investigation into those allegations. FCM Smith generally testified as to her understanding of the incident—Boyfriend's daughter and Mother argued and when Boyfriend intervened Mother pulled a butcher knife on him. Either Mother or Boyfriend then threw the knife in the sink, and Mother punched Boyfriend four or five times in the head. As to the specifics of what she was told, FCM Smith stated Boyfriend told her Mother "smacked him in the face." Tr. Vol. II p. 9. Finally, she related Boyfriend's teenage son told her Mother "pull[ed] out the butcher [knife]" on Boyfriend and "there was also a gun involved," Mother "drinks every night," and "he was afraid to [go] home" because of Mother's behavior. *Id* at 10. The second witness, FCM Stephanie Hale, testified only as to Mother's participation in services after Child's removal. The trial court found Child is a CHINS "based upon the testimony I've heard today[.]" *Id.* at 15.

[5] Later that month, the trial court entered an order adjudicating Child a CHINS under Indiana Code section 31-34-1-1. The order includes findings and conclusions, stating in part:

> 4) Mother has ongoing mental health issues that affect her ability to provide adequate care, treatment, and supervision of the child.

> 5) Mother is in need of services to address the issue of mental health.

6) The family would not receive services without the coercive intervention of the Court.

7) The child needs care, treatment, or rehabilitation that Mother is unable to supply, which would not likely be provided without the coercive intervention of the Court.

Appellant's App. Vol. II pp. 33-34.

Mother now appeals.[2]

# Discussion and Decision

Mother argues the evidence presented at the fact-finding hearing is insufficient to support the CHINS determination. Here, the trial court entered findings and conclusions sua sponte. Therefore, our review is governed by Indiana Trial Rule 52(A). *Matter of N.C.*, 72 N.E.3d 519, 523 (Ind. Ct. App. 2017). "For issues covered by the [trial] court's findings, we first consider whether the evidence supports the factual findings and then consider whether those findings support the [trial] court's judgment." *Id.* We will set aside the findings or judgment only if they are clearly erroneous. *Id.* "Findings are clearly erroneous when there are no facts in the record to support them[.]" *Id.* We review any remaining issues under the general-judgment standard, under which a judgment "will be affirmed

[2] On August 5, 2020, DCS requested its wardship over Child be terminated after Father was given custody of Child. The trial court terminated wardship the following day. This does not render the matter moot, however, as a CHINS adjudication can have other ramifications on parents. *See In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014), *reh'g denied*.

if it can be sustained on any legal theory supported by the evidence." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014) (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)), *reh'g denied.*

[8] The trial court found Child is a CHINS under Indiana Code section 31-34-1-1, which provides a child is a CHINS if that child is under eighteen and:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that the child:
>
>> (A) is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

DCS must prove by a preponderance of the evidence the child is a CHINS. Ind. Code § 31-34-12-3. In sum, a CHINS adjudication "requires three basic elements: that the parent's actions or inactions have seriously endangered the

child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d at 1287. Mother asserts DCS failed to show all three elements. We agree as to the first element, so we need not address Mother's remaining arguments.

[9]     The trial court found "Mother has ongoing mental health issues that affect her ability to provide adequate care, treatment, and supervision of the child." Appellant's App. Vol. II p. 33. Although the trial court did not have to enter findings, "once the trial court walks down the path of making findings, it is bound under Indiana Trial Rule 52(A) to make findings that support the judgment." *In re C.M.*, 960 N.E.2d 169, 175 (Ind. Ct. App. 2011) (quoting *Parks v. Delaware Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1281 (Ind. Ct. App. 2007), *superseded by statute on other grounds*), *aff'd on reh'g,* 963 N.E.2d 528 (Ind. Ct. App. 2012). No evidence as to Mother's mental health was presented at the fact-finding hearing. The only evidence admitted was the testimony of the two FCMs, neither of whom addressed Mother's mental health. The only evidence in the record even suggesting Mother had a mental-health problem was the original report made to DCS, which claimed Mother was mentally unstable. But DCS offered no proof of this allegation—and didn't even mention it—at the fact-finding hearing.

[10]    DCS contends the trial court "reasonably infer[red]" Mother had mental-health issues that endangered Child based on the domestic-violence allegations and Boyfriend's son's statement she drinks every night. Appellee's Br. p. 17. To be sure, domestic violence and excessive drinking can suggest mental-health issues.

However, we do not have enough facts to support that here. Not enough of the circumstances of the single domestic-violence incident was presented at the hearing. While Boyfriend's son told FCM Smith that Mother pulled a knife on Boyfriend, he also said a gun was involved, and the record does not indicate who possessed the gun or how it was involved. And while Boyfriend's son's statement that Mother "drinks nightly" is concerning, there was no evidence indicating how much she drinks per night or that she suffers from alcoholism. As such, the trial court's finding Mother had mental-health issues is not supported by the evidence.

[11] The State also argues that even if there is insufficient evidence to find Mother had mental-health issues, we should affirm the trial court's CHINS determination under the general-judgment standard based on the evidence of domestic violence in the household. However, "we are bound by the findings of the trial court on the issues that are covered[.]" *Park*, 862 N.E.2d at 1280. Here, the trial court's finding covered the endangerment element, and as such "we are not at liberty to scour the record to find evidence to support the judgment." *Id*.

[12] Because the evidence does not support the trial court's CHINS finding, we reverse the judgment.

[13] Reversed.

Brown, J., and Pyle, J., concur.